**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

**VICTORIA S. ELLIOTT,**

**Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY, *sued as Kilolo Kijakazi, Acting Commissioner of Social Security*,**[1]

**Defendant.**

**CAUSE NO. 1:20-cv-00270-SLC**

**OPINION AND ORDER**

Plaintiff Victoria S. Elliott appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI"). (ECF 1). For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.

**I. FACTUAL AND PROCEDURAL HISTORY**

Elliott applied for SSI in July 2017, alleging disability as of February 23, 2005, which she later amended to July 17, 2017.[2] (ECF 17 Administrative Record ("AR") 53, 255-68). Elliott's claim was denied initially and upon reconsideration. (AR 53, 154-77). On January 29, 2019, administrative law judge John Carlton (the "ALJ") conducted an administrative hearing at which Elliott, who was represented by counsel, and a vocational expert testified. (ECF 17-1

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, *see, e.g.*, *Butler v. Kijakazi*, 4 F.4th 498 (7th Cir. 2021), and thus, she is automatically substituted for Andrew Saul in this case, *see* Fed. R. Civ. P. 25(d).

[2] SSI is not payable until the month following the month in which a claimant files her SSI application. *See* 20 C.F.R. § 416.335. Therefore, the first month Elliott could be eligible to receive SSI is August 2017, given that she applied for SSI in July 2017.

Supplemental AR 865-96). On June 5, 2019, the ALJ rendered an unfavorable decision to Elliott, concluding that she was not disabled because she could perform a significant number of unskilled, light-exertional jobs in the national economy despite the limitations caused by her impairments. (AR 53-66). The Appeals Council denied Elliott's request for review (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

Elliott filed a complaint with this Court on July 28, 2020, seeking relief from the Commissioner's decision. (ECF 1). In her appeal, Elliott alleges that a remand is necessary because the ALJ: (1) failed to submit new medical evidence—namely, a March 2018 CT scan—to medical expert review; and (2) failed to adequately account for her moderate limitations in concentration in the residual functional capacity ("RFC"). (ECF 21 at 8-18).

At the time of the ALJ's decision, Elliott was fifty years old (AR 255), had a ninth grade education (AR 278), and had no past relevant work (AR 64, 278). In her application, Elliott alleged disability due to "[a]bnormal endocrine laboratory test," "thyroid function," acute bronchitis, acute sinusitis, adrenal cortical adenoma, anxiety, depression, atherosclerotic heart disease, cardiac chest pain, and chronic obstructive pulmonary disease (COPD). (AR 277).

**II. STANDARD OF REVIEW**

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III. ANALYSIS

### *A. The Law*

Under the Act, a claimant seeking SSI must establish that she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is

currently unemployed in substantial gainful activity; (2) whether she has a severe impairment; (3) whether her impairment or combination of impairments meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. Part 404, Subpart P, App'x 1; (4) whether she is incapable of performing her past relevant work; and (5) whether she is incapable of performing work in the national economy.[3] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); 20 C.F.R. § 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868 (citation omitted).

*B. The Commissioner's Final Decision*

On June 5, 2019, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 53-66). At step one, the ALJ concluded that Elliott had not engaged in substantial gainful activity after her application date of July 17, 2017. (AR 55). At step two, the ALJ found that Elliott had the following severe impairments: coronary artery disease, peripheral vascular disease, degenerative lumbar disc disease, COPD, depression, and anxiety. (*Id.*). At step three, the ALJ concluded that Elliott did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 56).

Before proceeding to step four, the ALJ determined that Elliott's symptom testimony was

[3] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 416.920(e).

not entirely consistent with the medical evidence and other evidence of record. (AR 58). The ALJ assigned Elliott the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except that the claimant cannot climb ladders, ropes or scaffolds; she cannot work on slippery or uneven surfaces; she can occasionally use stairs and ramps; she can occasionally balance, stoop, crouch, crawl and kneel; she cannot be around dangerous machinery or unprotected heights, and she cannot operate a motor vehicle as a condition of employment. The claimant is limited to doing simple routine tasks not done at a production rate pace; she can only occasionally interact and react appropriately to supervisors and coworkers on an occasional basis, but her contact with the general public should be superficial and not be part of the job duties of the required positions. The claimant must work indoors in a temperature controlled environment with no exposure to excessive gases, fumes, odors, heat, cold, humidity, pollen or other pulmonary irritants but would be able to work in what one would typically expect in an office environment.

(AR 57-58).

The ALJ found at step four that Elliott had no past relevant work. (AR 64). At step five, the ALJ concluded that given Elliott's RFC, age, education, and work experience, she could perform a significant number of unskilled, light-exertional jobs in the national economy, including collator, inspector/hand packager, and a routing clerk. (AR 65). Accordingly, Elliott's application for SSI was denied. (AR 65-66).

*C. The March 2018 MRI*

In November 2017, Jerry Smartt Jr., M.D., a state agency physician, reviewed Elliott's records and concluded that she could lift ten pounds frequently and twenty pounds occasionally, stand or walk about six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and perform occasional postural movements. (AR 161-62). In January 2018, J. Sands, M.D., another state agency physician, reviewed Elliott's records and concluded the same. (AR 173-75). The ALJ found these state agency physicians' opinions "persuasive" under 20 C.F.R. §

416.920c,[4] and assigned her an RFC for a narrowed range of light-exertional work, denying her claim for disability.[5] (AR 63, 66).

Subsequent to the state agency physicians' review, however, Elliott underwent a CT scan of her lumbar spine in March 2018, which revealed "arthritic changes throughout the lumbar spine," including mild to moderate disc bulges, mild to moderate facet disease, and mild to moderate spinal stenosis throughout her lumbar spine. (AR 537-38). The ALJ discussed this imaging evidence (AR 56, 60, 62) and concluded that it "supported" the state agency physicians' opinions (AR 63 ("Although the record was not complete at the time these [state agency physicians'] assessments were made, they are supported by the [CT imaging] records that were subsequently submitted.")). Now, Elliott argues that the ALJ materially erred in handling this CT imaging evidence, asserting "that the ALJ should have re-submitted [her] case to medical expert scrutiny in light of the . . . [CT imaging] evidence that surfaced after the state agency consultants had reviewed the case." (ECF 21 at 9).

---

[4] In assessing medical opinion evidence, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Rather, the ALJ is to consider the following factors when determining the proper weight to apply to the opinion or prior administrative finding: (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length, purpose, and extent of the treatment relationship, the frequency of examinations, and the examining relationship; (4) specialization; and (5) other factors brought to the attention of the Commissioner. 20 C.F.R. § 416.920c(c); *see Etherington v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 414556, at *3 (N.D. Ind. Jan. 21, 2021), *R. & R. adopted by Bart E. v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 411440 (N.D. Ind. Feb. 5, 2021). "Although the ALJ must consider all of these factors, he need only explain how he considered supportability and consistency." *Kaehr v. Saul*, No. 3:19-CV-1171-PPS, 2021 WL 321450, at *3 (N.D. Ind. Feb. 1, 2021) ("[T]he factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be." (quoting 20 C.F.R. §§ 404.1529c(b)(2), 416.920c(a))).

[5] In contrast, Stephen Parker, M.D., the Social Security Administration's consultative examiner, concluded in October 2017 that Elliott could not lift or carry ten pounds occasionally or stand or walk at least two hours in an eight-hour workday. (AR 435). Brian Adams, M.D., Elliott's treating primary care physician, reached the same conclusion in December 2018. (AR 862). The ALJ, however, found these examining and treating medical source opinions unpersuasive, relying instead on the reviewing opinions of the state agency physicians. (AR 62-63).

Indeed, the ALJ's handling of Elliott's CT imaging results is flawed because the ALJ impermissibly "played doctor." *See Akin v. Berryhill*, 887 F.3d 314, 317 (7th Cir. 2018); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014); *Dohner v. Saul*, No. 1:18-CV-251-HAB, 2019 WL 6888450, at *3-4 (N.D. Ind. Dec. 18, 2019). The ALJ concluded that the CT results "supported" the opinions of the state agency physicians and the RFC assigned by the ALJ. (AR 63). "But, without an expert opinion interpreting the [CT] results in the record, the ALJ was not qualified to conclude that the [CT] results ["supported"] his assessment." *Akin*, 887 F.3d at 317. Ultimately, "[t]he [CT] results may corroborate [Elliott's] complaints, or they may lend support to the ALJ's original interpretation, but either way the ALJ was not qualified to make his own determination without the benefit of an expert opinion." *Id.* at 317-18. "The ALJ had many options to avoid this error; for example, he could have sought an updated medical opinion." *Id.* But a remand is required if the ALJ "impermissibly interpreted the [CT] results himself." *Id.*; *see also McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) ("An ALJ may not conclude, without medical input, that a claimant's most recent [CT] results are 'consistent' with the ALJ's conclusions about her impairments.").

The Commissioner argues, however, that the ALJ did not "play doctor" when considering the CT results or draw improper inferences from them, but simply "recounted" the results with the other evidence of record. (ECF 27 at 9); *see, e.g.*, *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021) (concluding that the ALJ was not playing doctor, but rather "was just considering Plaintiff's condition and treatment—as required"). Not so. Under Seventh Circuit case law, the ALJ went a step farther than recounting the CT results when he interpreted that they "supported"—i.e., were "consistent" with—the limitations assigned by the state agency

physicians. (AR 63); *see McHenry*, 911 F.3d at 871; *Akin*, 887 F.3d at 317.

The Commissioner responds that the CT results do not "contradict, let alone invalidate, the opinions of Drs. Smartt and Sands as to [Elliott's] physical functional limitations. . . . [where] the physician who interpreted the CT scan did not opine as to any associated functional limitations." (ECF 27 at 10). The Commissioner adds that "the CT scan did not lead to any discussion of surgery or other more intrusive treatment. . . . [but rather] Dr. Winters recommended a steroid injection and pain management." (*Id.* (citing AR 546, 607)). But that argument "misses the point." *Dohner*, 2019 WL 6888450, at *4. "It is the fact that the [CT] scan did not mention functional limitations that makes the ALJ's ruling problematic." *Id.* "The lack of any direction from a medical expert means that the ALJ's finding of consistency between the state agency physician's RFC determination and the [CT] results is necessarily the ALJ's opinion alone. This is precisely the kind of 'playing doctor' that the Seventh Circuit has repeatedly warned against." *Id.*

And contrary to the Commissioner's suggestion, there is no assurance that this amounts to mere harmless error. (ECF 27 at 10 (citing *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021) (explaining that an error is harmless where correction of that error would not have changed the result)). It is possible that the March 2018 CT imaging results could have changed the state agency physicians' opinions about the amount of time Elliott could stand and walk in an eight-hour workday, the amount she could safely lift in an eight-hour workday, or other limitations. This matters because Elliott was fifty years old on the date of the ALJ's decision, which makes her a person "closely approaching advanced age" under the regulations. 20 C.F.R. § 416.963(d). Had the ALJ limited her to sedentary work rather than light work, she may have been found

disabled under the grid rules based on her age, experience, and limited education. *See* 20 C.F.R. Part 404, Subpart P, App'x 2, Rule 201.09; SSR 96-9p, 1996 WL 374185, at *2 (July 22, 1996); *see generally Butler v. Kijakazi*, 4 F.4th 498, 502-03 (7th Cir. 2021).

In sum, the ALJ "played doctor" when he concluded that the March 2018 CT results "supported" the opinions of the state agency physicians, where no medical source had opined as such. (*See* AR 63). Consequently, the ALJ's decision will be remanded for reconsideration of this evidence and Elliott's RFC.[6]

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order. The Clerk is DIRECTED to enter a judgment in favor of Elliott and against the Commissioner.

SO ORDERED.

Entered this 26th day of October 2021.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge

---

[6] Given that a remand is warranted based on this basis, the Court need not reach Elliott's remaining arguments.